IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| COOPERVISION, INC.. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 2:06CV149 |
| v. | § | |
| | § | |
| CIBA VISION CORP., | § | JUDGE RON CLARK/ |
| | § | JUDGE EARL HINES |
| *Defendant.* | § | |
| | § | |

**MEMORANDUM AND ORDER**

Referred to the undersigned for determination are: (1) CooperVision, Inc.'s Motion to Compel [Doc. # 127], (2) CooperVisions Inc.'s Second Motion to Compel [Doc. # 133] and Defendant CIBA Vision Corp.'s Motion to Compel [Doc. # 126].

**I.  Nature of Action**

CooperVision filed suit against CIBA Vision Corporation ("CIBA") claiming infringement of United States Patent Nos. 6,431,706 and 6,923,538 (collectively, "the Edge Design patents") and of United States Patent Nos. 6,467,903; 6,857,740; 6,971,746; 7,133,174; and 7,134,753 (collectively, "the Toric patents").  The first family of patents, the Edge Design patents, relate to methods and tools for producing contact lenses with a substantially smooth, rounded edge profile without the need for post-processing steps.  The second family of patents, the Toric patents, relate to contact lens with an improved thickness and rotational stabilization structure designed to

maximize eyelid interaction and reduce the variability of lens orientation between individuals in lenses that are non-axi-symmetric, such as toric or multifocal lenses.

## II.  Motions to Compel

Bullying, venomous and tit-for-tat pretrial antics go against the letter and spirit of the Federal Rules of Civil Procedure, and they especially assail customary and expected practice in the Eastern District of Texas.  The parties and their counsel in this case unfortunately appear more inclined to engage in such conduct rather than cooperate and participate in good faith in licit, extrajudicial discovery of relevant evidence.  As early as the case management conference, the court noted ". . *it does not appear to me that both sides are getting along very well,"* and further detected that there was lacking "*a fair, adult, good-faith exchange of what are the real problems .*"  January 3, 2007, CMC Trans. at pp. 38, 40.  The court warned, "*I'm not sure we want to get into that kind of discovery hearing where basically it doesn't matter what discovery issue comes up; someone pays sanctions.*"  *Id.* at p. 39.

Notwithstanding that early admonishment, the parties bickered over scheduling deadlines less than a month after the case management conference, arguing in at least one instance about agreed deadlines that had already passed.[1]  The parties' disdain for one another (and of their obligations to the court) erupted again shortly thereafter when, within a two week period, they inundated the court with no less than three discovery disputes that should have been largely

---

[1] On February 1, 2007, CIBA moved to amend the scheduling order, seeking a wholesale modification of issues that were already agreed to and/or discussed at the case management conference.

2

resolved without a hearing. Once court intervention was imminent, the parties agreed upon a disposition.[2]

Rancor continued. Prior to the Claims Construction Hearing, the parties sent letter briefs quibbling over matters such as whether the opposing side's technology tutorial was overly argumentative. There was also a dispute over whether one party's expert could appear at the *Markman* hearing despite the court's order *requiring* an expert witness to be present for each party. *See* [Doc. #98] at p. 2.

The parties replicate such chaffy behavior in their present dispute. CIBA filed its motion to compel [Doc. #126] on July 13, 2007. Less than two hours later, CooperVision responded with its own motion [Doc. #127], and within a week filed yet a second motion to compel on July 19, 2007. Just as before, both sides' "shoot first" strategies are now unmasked as mostly unnecessary, artless and petulant. The majority of issues raised and argued *ad nauseum* in warring motions, responses, replies, and, yes, even a sur-reply, are moot, and the few remaining issues have reasonable solutions so obvious that the court must wonder whether the clients' interests were advanced by the expenditure of so much highly-compensated attorney time on such a parenthetic skirmish.

---

[2] On April 17, 2007, CIBA moved to compel production of documents describing the molds and tools used to make commercial contact lenses that are prior art and also requested that it be allowed to amend its invalidity contentions with respect to any prior art derived from said documents. In response, CooperVision agreed to search for and produce the documents. CooperVision further agreed that CIBA might amend its invalidity contentions after receipt of the relevant documents within 30 days after their production. On April 20, 2007, the court issued an order reflecting the parties' agreement.

    A.    <u>CooperVision's Requests</u>

CooperVision requests CIBA to produce documents related to the following categories:

- Category 1: Comparison of lenses made from the same material with different edge designs.

- Category 2: Clinical studies that involve lotrafilcon A, lotrafilcon B, or any other silicone hydrogel material and that report data on safety, scuffing, irritation or comfort.

- Category 3: Clinical studies involving contact lenses with a rounded edge as that term is defined by the court.

- Category 4: Clinical data on the influence of edge design on safety, scuffing, irritation, or comfort, or that compare the performance of edge design.

- Category 5: A list of documents correlating CooperVision's produced documents to CooperVision's lenses that CIBA asserts invalidate the patents-in-suit.

- Category 6: Documents from the Institute for Eye Research ("IER"), the Cornia and Contact Lens Research Unit at the University of New South Wales ("CCRLU"), and Vision CRC, related to the development of the O2Optix lenses, as well as any communications regarding the use of the technology in the patents at issue.

In response, CIBA maintains that it has produced all its clinical trial "that specifically look at, relate to or report on" edge design (regardless of whether that edge design was a "rounded edge" design) and/or that "compare lenses made from the same material with distinct edge designs." CooperVision's reply concedes that the dispute now concerns only discovery requests relating to Categories 2, 3, 5 and 6.

    B.    <u>CIBA's Requests</u>

CIBA requests CooperVision to produce the following categories of documents:

- Category 1: An index correlating the documentation CooperVision produced showing the tools and molds for its prior art molded lenses.

- Category 2: Documents sufficient to show the structure, ballast and otherwise, for all of CooperVision's aspherical lenses that are prior art to any of the claims of the toric patents.

- Category 3: Documents from IER that are relevant to any claim or defense of a party.

### III. Discussion and Analysis

A.    <u>CooperVision's Requests</u>

*i. Category 2: Clinical studies that involve lotrafilcon A, lotrafilcon B, or any other silicone hydrogel material and that report data on safety, scuffing, irritation or comfort.*

CooperVision seeks discovery of data on all silicone hydrogel trials that report data on safety, scuffing, irritation or comfort, including discovery on all of the clinical studies that do not relate to the edge of the contact lens. CooperVision argues that data on safety and comfort of silcone hydrogels is relevant to CIBA's assertion that the edge design disclosed in the asserted patents does not increase safety and comfort.

CIBA responds that the request is overbroad because it includes clinical trials that are not for the accused product, O2Optix, and that do not directly relate to edge design.

The lens material in the accused O2Optix product is lotrafilcon B. Its predecessor material is lotrafilcon A. Both are silicone hydrogel substances. CooperVision's complaint specifically alleges that the O2Optix contact lenses infringe the patents. In fact, at the case management conference, CooperVision confirmed that the accused device is "CIBA Vision's flagship line, which is their O2Optix line." October 10, 2006, CMC Trans. at p. 7-9. Additionally, in its infringement contentions dated November 6, 2006, CooperVision provided CIBA with a chart purporting to list its element-by-element allegations of infringement of this service. CooperVision did not allege infringement by any other product in its infringement contentions. Since CooperVision has not asserted infringement of all silicone hydrogel products, documents regarding other clinical trials are irrelevant to CooperVision's infringement allegations, and are outside the scope of discovery on that issue at this time.

CooperVision's request may, however, seek information relevant to CIBA's invalidity argument. Although not requested until very late in the game, information pertaining to lotrafilcon A and lotrafilcon B appears reasonably calculated to lead to discovery of admissible evidence. However, CooperVision has failed to meet its burden to show how documents regarding clinical trials of *all* silicone hydrogel products may be relevant.

In any event, Coopervision's request regarding clinical trials of *all* silicone hydrogel products is overbroad under Fed. R. Civ. P. 26(b). Placing every item of clinical data at issue would result in significant expense for the parties. Given that CIBA has already produced all clinical studies involving contact lenses with a rounded edge, any marginal relevance of the information is outweighed by the burden and expense of the proposed discovery.

Therefore, CooperVision's motion to compel documents on clinical studies reporting data on safety, scuffing, irritation or comfort for lotrafilcon A and lotrafilcon B is **GRANTED;** but CooperVision's request for that information on any other silicone hydrogel material is **DENIED**.

*ii. Category 3: Clinical studies involving contact lenses with a rounded edge as that term is defined by the court.*

CooperVision requests clinical studies involving contact lenses with a rounded edge. CIBA certified that it has already produced all clinical trials that involve edge design, regardless of whether that edge design was a rounded edge design. Accordingly, CooperVision's motion to compel documents on clinical studies involving contact lenses with a rounded edge is **DENIED as moot**.

*iii. Category 5: A list of documents correlating CooperVision's produced documents to CooperVision's lenses that CIBA asserts invalidate the patents-in-suit.*

CIBA's invalidity contentions list 30 commercial contact lenses (including 20 CooperVision lenses) which it believes are prior art to the patents in suit. CooperVision seeks a list of documents correlating CooperVision's produced documents to CooperVision's lenses that CIBA asserts invalidate the patents-in-suit. CIBA provided a list of documents upon which it relies as showing the characteristics of CooperVision's lenses that CIBA included in its invalidity contentions.

Given that CIBA sent CooperVision the list on July 25, 2007, CooperVision's motion to compel this document is also **DENIED as moot.**

*iv. Category 6: Documents from the Institute for Eye Research ("IER"), the Cornia and Contact Lens Research Unit at the University of New South Wales ("CCRLU"), and Vision CRC, related to the development of the O2Optix lenses, as well as any communications regarding the use of the technology in the patents at issue.*

CooperVision moves the court to order CIBA to request from the IER (and any other related Australian entities involved in the development of the O2Optix lenses), documents relating to the development of the O2Optix lenses, including documents related to the use of the technology claimed in the patents-in-suit in the development of the O2Optix lenses. CIBA responded that it will pursue the requests in good faith. As such, CooperVision's motion to compel CIBA to request documents from the IER, the Cornia and CCRLU, and Vision CRC is **DENIED as moot.**

B.   CIBA's Requests

*i. Category 1: An index correlating the documentation CooperVision produced showing the tools and molds for its prior art molded lenses.*

CooperVision produced over 32,000 documents in response to CIBA's requests seeking tool and mold designs for all of CooperVision's prior art molded contact lenses. CIBA seeks to compel CooperVision to provide an index correlating the documents with the lenses they represented. As grounds, CIBA avers that while some of the documents can be correlated with lenses, many documents contain markings or numbers without a sufficient explanation to show

which lenses they represent.  As such, CIBA contends that the files were not presented in a way that would allow it to make a reasonable use of them.

CooperVision replies that it has satisfied its discovery obligation by producing the documents as they are kept in the usual course of business.  Moreover, CooperVision offers to provide whatever information it can on any specific documents in CooperVision's production about which CIBA has questions.

Fed. R. Civ. Pro. 34(b)(i) states that a party producing documents "shall produce them as they are kept in the usual course of business or shall organize them to correspond with the categories in the request."  The committee note accompanying the rule indicates that the reason this sentence was added was to prevent production of critical documents in a manner that might obscure their significance.  Clearly, the underlying assumption was that production of records as kept in the usual course of business ordinarily will make their significance pellucid.  That is the overarching purpose of the rule.

When a producing party chooses not to organize documents to correspond with categories in the request, it is the producing party's burden to demonstrate that documents are produced as kept in the usual course of business.  See Johnson v. Kraft Foods North America, 236 F.R.D. 535 (D. Kan. 2006) ("a party who chooses the Rule 34(b) option to produce documents as they are kept in the ordinary course of business bears the burden of showing that the documents were in fact produced in that manner and [] a mere assertion that they were so produced is not sufficient to carry that burden").  Moreover, simply placing documents in boxes and making them available does not conform to the rule.  See Innovative Therapy Products, Inc. v. Roe, 1999 WL 13934

(E.D. La. 1999) ("[b]y simply making 'boxes of documents' available for inspection, defendant may also have failed to make the documents available in the manner contemplated by Rule 34(b)"); Bowman v. Orleans Parish School Board, 2004 WL 459313 (E.D. La. 2004).

Here, CooperVision's assertion that it produced documents as kept in the ordinary course of business is unsupported *ipse dixit*. Moreover, the documents appear to have been produced in much the same manner as making "boxes of documents" available. Therefore, the court concludes that CooperVision should provide more individualized responses to the requests, as numbered and identified therein. It will suffice, however, for CooperVision to (a) identify which documents are responsive to which lenses by a range of bates numbers, e.g. "1000-1012, 1075-98 are responsive to #1, 8273-9837, 7653-8001 are responsive to #2, etc.. . ." on or before **August 13, 2007**, and (b) provide within 96 hours whatever information it has on any specific documents in CooperVision's production about which CIBA has remaining correlation questions.

CIBA's motion on this issue is **GRANTED** to the extent stated above, but is otherwise **DENIED.**

*ii. Category 2: Documents sufficient to show the structure, ballast and otherwise, for all of CooperVision's aspherical lenses that are prior art to any of the claims of the toric patents.*

CIBA originally moved the court to order CooperVision to search for and produce information on all historical "aspherical" lenses CooperVision has ever produced. In reply to CooperVision's assertion that the request was too broad, CIBA narrowed its request to documents related to all of CooperVision's "prior art ballasted lens, regardless of whether they are

10

CooperVision's lenses, or lenses from a predecessor company of CooperVision." (emphasis added).

CooperVision responded that it has produced documentation for two prior art ballasted lens: Ultra T and Xcel (Encore), and further certified that such production encompasses all of its documentation on its prior art ballasted lens. CIBA remains skeptical because the produced documents comprise only 56 pages on Ultra T.

The court has no way to know whether more documentation exists than has been produced. Given, however, CooperVision's certification that it has already produced all of its documentation on its relevant prior art ballasted lens, CIBA's motion to compel is **DENIED as moot.** Should depositions or other discovery later reveal that CooperVision possesses any other design documents relevant to the invalidity claim or defense, CooperVision may face imposition of sanctions for its failure to produce them.

*iii. Category 3: Documents from IER that are relevant to any claim or defense of a party.*

CIBA moves to compel all documents from the Institute for Eye Research that are relevant to any claim or defense of either party. CIBA alleges that the development work for the alleged inventions in CooperVision's patents occurred either at or in partnership with the Institute for Eye Research, an Australian company that tests and develops contact lenses. CIBA states that Arthur Back, the sole inventor listed on the Toric Patents, worked for IER at the time of the alleged inventions and now works for CooperVision.

11

CooperVision responds that it already has requested all documents from IER that relate to the design, development or clinical studies involved with any of the patents-in-suit, and any communication between IER and CooperVision regarding CIBA's O2Optix lenses. Accordingly, CIBA's motion to compel this information is **DENIED as moot**.

CIBA further seeks:

a) IER documents sufficient to show the tool and mold designs for all of IER's (or related/affiliated company's) prior art molded contact lenses, and;

b) documents sufficient to show the structure, ballast and otherwise, for all IER (or related/affiliated company's) aspherical (e.g., toric, bifocal, etc.) lenses that are prior art to any of the claims of the toric patents.

Section 271 of Title 35 of the United States Code provides, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Documents relating to the concept, design and manufacturing of allegedly infringing products are relevant for purposes of discovery since making a patented product without authorization is, itself, an infringing activity. Furthermore, process documents may lead to the discovery of admissible evidence since product features are defined during the concept, design and manufacturing process.

However, CIBA has not justified its request for documents showing the tool and mold design for *all* of IER's prior art lenses as relevant to the validity of the patents in suit. *See* 35 U.S.C. § 102(a) and (g)(2)("the invention was known or used by others in this country;" "before such person's invention thereof, the invention was made in this country by another . . . ."); 1 DONALD S. CHISUM, CHISUM ON PATENTS § 3.05[5](on-line edition). Given that prior inventions

or use must be in this country to affect validity, the research lenses designed by the IER in Australia are not relevant to the validity of the patents.  Therefore, CIBA's motion to compel the documents for any of IER's prior art lenses is **DENIED.**

    SIGNED this __6__ day of August, 2007.

                                                    _____
                                                  Earl S. Hines
                                                  United States Magistrate Judge